M. EUGENE GIBBS,[1]

        Plaintiff,

vs.                                 CASE NO. 3:11-cv-75-J-34TEM

THE UNITED STATES OF AMERICA:
Justice Department, Labor Department,
Department of Defense, and
DOES, 1-100,

        Defendants.

_____

# REPORT AND RECOMMENDATION[2]

      This case has been referred to the undersigned for issuance of a Report and Recommendation on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #27, Motion to Dismiss), filed April 1, 2011. Plaintiff has also filed two motions to amend the complaint (Docs. #65 & #81). For the reasons stated herein, it is respectfully **RECOMMENDED** that Defendants' Motion to Dismiss be **GRANTED** and the motions to amend the complaint be **DENIED**.

      Plaintiff filed the initial complaint in this matter on January 25, 2011 (Doc. #1).

_____

[1] Plaintiff refers to himself as M. Eugene Gibbs in the original complaint (Doc. #1). In other filings with the Court, Plaintiff has referred to himself as M. Eugene Gibbs-Squires (*see, e.g.*, Doc. #11, Amended Complaint). Despite this change by Plaintiff, the Court declines to alter the style of the case.

[2] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation. Failure to file a timely objection waives a party's right to a *de novo* review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Local Rule 6.02(a), United States District Court for the Middle District of Florida.

The Court struck the complaint based on a finding it was a "shotgun pleading"[3] and allowed Plaintiff to file an amended complaint  (*see* Doc. #5, Court Order).  Plaintiff filed an amended complaint (Doc. #6) on February 14, 2011, and then filed another amended complaint (Doc. #11) (which the Court will refer to as the "Second Amended Complaint") on February 18, 2011.[4]

The United States thereafter filed Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint and Memorandum in Support Thereof  (Doc. #27).  Defendants request the Court dismiss Plaintiff's Second Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  The matter was then referred to the undersigned for a Report and Recommendation on the Motion to Dismiss  (*see* Doc. #80, Court Order). After the motion to dismiss was filed, Plaintiff filed a Motion for Leave to Amend Complaint (Doc. #65, hereinafter referred to as the "Third Amended Complaint") (proposed complaint attached as Doc. #65-1)[5] on August 16, 2011.  On October 14, 2011, Plaintiff filed an Amended Motion for Leave to File an Amended Complaint (Doc. #81, hereinafter referred

---

[3] The Court also noted there were other questions concerning subject matter jurisdiction and venue  (Doc. #5).

[4] The Court will consider the initial amended complaint (Doc. #6) as moot based on the filing of the Second Amended Complaint (Doc. #11) four days later.

[5] The proposed amended complaint filed as Doc. #65-1 has several deficiencies in numbering, including two Counts Five and Six.  Count Four is out of sequence.  The last three counts (Four, Five and Six) (which are after Count Eleven) contain attempted adoption of earlier paragraphs, the exact type of shotgun pleading the Court had stricken previously  (*see* Doc. #5).

to as the "Fourth Amended Complaint") (the proposed amended complaint is attached as Doc. #81-1).[6]

For reasons described in detail below, the undersigned finds the Motion to Dismiss should be granted and the motions to amend the complaint should be denied. All of the proposed complaints contain similar deficiencies including lack of subject matter jurisdiction, lack of proper venue, continued shotgun pleadings and failure to state a plausible claim. In addition, many of the claims have been raised previously in cases dismissed in other jurisdictions.

## I. Factual Background

Plaintiff is a former New York City police officer. *See Gibbs v. New York City Police Dept.*, No. 88-cr-3638, 1992 WL 302910 (E.D.N.Y. Oct. 2, 1992).[7] At some point, he became a contract administrator for the Department of the Defense and, in March 1987, he filed for benefits under the Federal Employee Compensation Act ("FECA") based on mental anguish caused by his employment (Doc. #27 at 3). In his initial complaint, Plaintiff alleged in 1986 he became a "whistle blower" against the agency for which he worked, and was subsequently retaliated against (Doc. #1 at 5-6). He alleges he became distraught and was involuntarily committed to a mental institution in 1988. Plaintiff was awarded FECA benefits in 1989 (Doc. #27 at 3).

---

[6] The Court will consider the motion for leave to file Third Amended Complaint (Doc. #65) as moot due to the amended motion for leave to file the Fourth Amended Complaint (Doc. #81).

[7] Gibbs refers to himself as a retired New York City police office in the matter of *Gibbs v. United States*, Civ. Action No. 8:09-cv-1779-PJM (D.Md. Jul. 6, 2009) (Doc. #1, ¶ 5, Supplemented 28 U.S.C. §§ 2241 & 2255 Motion... dated Jul. 6, 2009).

Plaintiff apparently attended law school and was admitted to the South Carolina Bar Association on November 21, 1994 (*see* Doc. #27-2 at 12). The Supreme Court of South Carolina ordered Plaintiff's status transferred to "incapacity inactive status" in April 2000. *In the Matter of M. Eugene Gibbs*, 531 S.E.2d 523 (S.C. 2000). Subsequently, Gibbs was disbarred based on several grounds, including the unauthorized practice of law in the Second Circuit Court of Appeals after the date he was placed on inactive status. *See In the Matter of M. Eugene Gibbs*, 562 S.E.2d 639 (S.C. 2002).

In 1997, Plaintiff, acting as counsel for James H. Johnson, filed suit in the Southern District of New York against the Smithsonian Institution and the Michael Rosenfeld Gallery, Inc., alleging various claims for recovery or damages concerning art work painted by William H. Johnson, a South Carolina artist who died while confined in a mental institution in 1970. *See Johnson v. Smithsonian Inst.*, 9 F. Supp. 2d 347 (S.D.N.Y. 1998). After William H. Johnson was committed to the mental institution in 1947, the Supreme Court of New York appointed a committee to administer the assets of his estate, which included numerous paintings. *Id.* at 349. After about eight years, the committee sought to abandon the artwork which had been stored in a warehouse, indicating to the court that it had been unable to sell it and the art had no cash value. *Id.* at 350. The Supreme Court of New York granted a petition to abandon the art work as worthless in 1956. *Id.* The Harmon Foundation took possession of the art, restored it, and in 1967 transferred 1,154 items to the Smithsonian. *Id.* Other pieces were acquired by the Rosenfeld Gallery. *Id.* James H. Johnson on behalf of William H. Johnson's heirs demanded return of the artwork in 1995 and sought damages in 1997. *Id.* Receiving no satisfaction, Plaintiff filed suit representing William H. Johnson's heirs in 1997. The district court dismissed the complaint, holding that

the action of the New York Supreme Court was final and it had no authority under the Rooker-Feldman Doctrine to review the state court action. *Id.* at 351. Johnson's heirs also alleged that the Harmon Foundation had unlawfully retained other pieces of Johnson's art work (later transferred to the Smithsonian Institution), and never returned them when he requested they do so in 1946. *Id.* The court found the Harmon Foundation was a necessary party, but dismissed the matter because claims for conversion and replevin in New York were governed by a three-year statute of limitations. *Id.* at 353-54.

On appeal, the Second Circuit Court of Appeals affirmed the portion of the district court's decision based on the Rooker-Feldman Doctrine as applied to the Smithsonian and the Rosenfeld Gallery, but reversed the lower court's finding that the Harmon Foundation was a necessary party and the statute of limitations prevented it from being joined. *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 187-88 (2d Cir. 1999). On remand, the district court found there was no longer any federal question jurisdiction since the Smithsonian Institution was out of the case, and there was no diversity jurisdiction between the remaining parties. *Johnson v. Smithsonian Inst.*, 80 F. Supp. 2d 197 (S.D.N.Y. 2000). The Second Circuit affirmed. *Johnson v. Smithsonian Inst.*, 4 Fed. App'x 69 (2d Cir. 2001). Years later, the district court denied Gibbs' motion to vacate its judgment under Federal Rule of Civil Procedure 60(b). *See Johnson v. Smithsonian Inst.*, No. 97 Civ. 5190 (VM), 2007 WL 3118866 (S.D.N.Y. Oct. 24, 2007).

Plaintiff has developed a conspiracy theory alleging that various government agencies and employees have engaged in a conspiracy against him, a claim which seems to underscore most of the causes of actions alleged in this case and other cases.

In 2002, Plaintiff filed a complaint in the District of Maryland, claiming the Department of Labor had improperly suspended his disability benefits in 1996. *Gibbs v. United States,* Civ. Action No. 8:02-cv-45-JFM (D.Md. Jan. 4, 2002). The court denied Gibbs' requests for injunctive relief and mandamus, with the decision being affirmed by the Fourth Circuit Court of Appeals. *See Gibbs v. United States*, 45 Fed. App'x 281 (4th Cir. 2002).

In 2003, Gibbs was charged in the District of Maryland with mailing a threatening communication to the Secretary of Labor. *United States v. Gibbs,* Crim. Action No. 8:03-cr-400-PJM) (D.Md. Sept. 8, 2003). He pled guilty, but later appealed. The Fourth Circuit affirmed the judgment. *See Gibbs v. United States*, 185 Fed. App'x 258 (4th Cir. 2006), *cert.denied*, 549 U.S. 1117 (2007). Gibbs later filed additional motions, which the district court construed pursuant to 28 U.S.C. § 2255 and denied. *See Gibbs v. United States*, Civ. Action Nos. PJM-09-856, PJM-03-3550, Crim. Action No. PJM-03-400, 2009 WL 1097898 (D.Md., Apr. 22, 2009).

Notably, in his petition for certiorari, Gibbs raised issues similar to those alleged in this case. *See Gibbs v. United States*, No. 06-708, 2006 WL 3381597 (Petition for Writ of Certiorari filed Nov. 20, 2006). He alleged a criminal enterprise dedicated to protecting stolen art and implied the criminal charge against him was because of his attempts to recover the stolen art. *Id.* at *27.

In 2009, Plaintiff filed a new matter entitled "Supplemented 28 U.S.C. §§ 2241 & 2255 Motion, Pursuant to Rule 60 and 18 U.S.C. § 1964 (RICO)" in the United States District Court for the District of Maryland. *Gibbs v. United States*, Civ. Action No. 8:09-cv-1779-PJM (D.Md. Jul. 6, 2009). In that 35-page motion, Plaintiff alleged the Assistant

United States Attorney who prosecuted him in the criminal case did so as part of a criminal conspiracy to protect the claimed art theft. The district court dismissed the matter *sua sponte,* finding it lacked "basis in reality."

> For example, Gibbs claims that Judges Messitte, Motz, Bennett, and Chief Judge Legg in this district, Judge David A. Faber, United States District Judge for the Southern District of West Virginia, the FBI, and an Assistant United States Attorney have conspired to convict him. Additionally, Gibbs complains that the Court has ignored the largest art theft in history. His 26-page pleading also makes random reference to Sonia Sotomayer, United States Court of Appeals Judge for the Second Circuit, former Alaska Senator Ted Stevens, comedian Bill Cosby, Congressman John Lewis, and the Regents of the Smithsonian Institution. Lastly, Gibbs asserts that his indictment was defective and requests a "full and complete explanation" to his mother-in-law. The claims contained in this pleading are fantastic, delusional and fictitious; taken together, they satisfy the requirements for summary dismissal.

*See Gibbs v. United States*, Civ. Action No. 8:09-cv-1779-PJM (D.Md. Jul. 6, 2009) (Doc. #2, Unpublished Order, dated Jul. 21, 2009).

## II. *Pro se* **status**

Plaintiff has filed the action *pro se. Pro se* complaints are to be held to a less stringent standard that those drafted by an attorney. *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986). However, in this case Plaintiff has been a member of the bar in South Carolina and has appeared and tried cases within the Second Circuit. *See Johnson v. Smithsonian Inst.*, 9 F. Supp. 2d 347 (S.D.N.Y. 1998); 189 F.3d 180 (2d Cir. 1999); 80 F. Supp. 2d 197 (S.D.N.Y. 2000); 4 Fed. App'x 69 (2d Cir. 2001); 2007 WL 3118866 (S.D.N.Y. Oct. 24, 2007). Therefore, the Court sees no need to afford Gibbs the more lenient standard given to *pro se* litigants in review and consideration of their cases. *But cf. Gibbs v. United States*, Civ. Action No. 8:09-cv-856, 2009 WL 1097898 (D.Md. Apr. 22, 2009) (applying liberal standard for adjudging *pro se* pleading filed by Gibbs after noting questions

concerning mental competency arose during the criminal proceeding). However, even if the Court were to use the liberal *pro se* standard, the undersigned's recommendations would not change. The leniency afforded to *pro se* pleadings "does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs, Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

### III. Motion to Dismiss

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 964 n.2 (11th Cir. 1997) (citation omitted). Despite Rule 8(a)'s liberal pleading requirement, "a complaint must still contain either direct or inferential allegations respecting all material elements of a cause of action." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006) (emphasis omitted). Rule 8, which describes the general rules of pleadings, and Rule 10, which describes the form of pleadings, work together "'to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.'" *Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996) (citation omitted). Moreover, in a case with multiple defendants, the complaint should contain

8

specific allegations with respect to each defendant; generalized allegations "lumping" multiple defendants together are insufficient to permit the defendants, or the court, to ascertain exactly what plaintiff is claiming. *See West Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. App'x 81, 86 (11th Cir. 2008)[8] (citing *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) and *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997)).

Plaintiff's first complaint was stricken because the Court found the complaint constituted an impermissible "shotgun pleading" (Doc. #5). Although the five counts alleged in the Second Amended Complaint no longer contain incorporation by reference to all allegations of each preceding count, the Second Amended Complaint nonetheless contains elements of an impermissible shotgun pleading. Plaintiff brings suit against the Department of Labor, Department of Defense, Department of Justice, and Does 1-100. Each count is directed at all Defendants. However, although Plaintiff refers to several individuals – Ms. DeCarlo, Dr. Moore, Kimberly A. Murray-Williams, Peter Stern, Michael Rosenfel, Patrick T. Ryan, AUSA Neil Corwin, Michael Rosenfeld, Rep. John Lewis, the actor Bill Cosby, Dr. David Driskell, Julia Bond, Mary Beatie Brady – he does not provide sufficient information to allow Defendants to discern who Does 1-100 might be. Moreover, the complaint lumps all of the Defendants together so that it is not clear exactly what

---

[8] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

Plaintiff is claiming against each Defendant.  *See West Coast Roofing*, 287 Fed. App'x at 86.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Facial plausibility means the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Factual allegations must be enough to raise a right to relief above the speculative level, based on the assumption that the allegations are true (even if doubtful in fact).  *Bell Atlantic*, 550 U.S. 544.

The Second Amended Complaint states the "gravamen of Plaintiff's suit is filed pursuant to the Racketeering and Influence Corrupt Organization Act (RICO): 18 U.S.C. §§ 1961, 1962 & 1964, and conspiracy. AND, [sic] the theft of Plaintiff psychiatric medical records from the State of Connecticut: to the extent said records were used to "drive" Plaintiff's arrest and destruction"  (Doc. #11, at 2) (emphasis in original).  Plaintiff is suing Defendants "to stop the racketeering and conspiracy implemented against Plaintiff, and to recover disability benefits Plaintiff loss [sic] as a direct result of improper actions taken against Plaintiff: including but not limited to retaliation against Plaintiff for demanding his legal rights under 5 U.S.C. §§ 8123(d) & 5596."  *Id.*

Quite frankly, Plaintiff's Second Amended Complaint is rambling and hard to understand.  It appears, however, Plaintiff alleges his disbarment and criminal conviction, and the decision regarding his disability claim, are interrelated by virtue of a conspiracy to

10

cover up "the largest art theft in U.S. history" and in retaliation for whistle blowing. As a whole, and individually, the claims contained in the Second Amended Complaint are fantastical and border on delusional; certainly the Second Amended Complaint does not "state a claim to relief plausible on its face." *Bell Atlantic*, 550 U.S. at 570.

Specifically, the Second Amended Complaint contains five counts. Count I alleges violation of 5 U.S.C. §§ 8123(d) & 5596. Plaintiff appears to allege the Department of Labor improperly withheld disability benefits. Plaintiff requests an injunction and $400,000. Count II alleges Plaintiff is a whistle blower and appears to allege the Department of Defense used employee travel funds to purchase computers. Plaintiff requests $300 billion and that he be re-instated to his position. Count III is for negligence and appears to allege several individuals stole Plaintiff's medical records from the State of Connecticut for the purpose of causing Plaintiff's mental breakdown and to have Plaintiff disbarred and imprisoned. Plaintiff also refers to an art conspiracy. Plaintiff alleges he has been damaged in the amount of $10 billion. Count IV alleges violations of 42 U.S.C. §§ 1985, 1986 & 1988. Plaintiff again refers to an art conspiracy involving the actor Bill Cosby, several congressmen, the Department of Justice, and the Harmon Foundation. Plaintiff then alleges, "AUSA Corwin combined and conspired with Investigator Ryan and Ms. DeCarlo for the purpose of denying Plaintiff his disability benefits awarded by the Secretary." Plaintiff requests $5 billion. Count V alleges violation of 42 U.S.C. § 1964.[9] Plaintiff alleges Defendants conspired to profit from stolen artwork and injured Plaintiff by

_____

[9] The undersigned notes no such section exists. However, review of the claims alleged in Plaintiff's proposed Fourth Amended Complaint reveals Plaintiff raises a claim under 18 U.S.C. § 1964 (see Doc. #81-1, Count XV). Thus, the undersigned will construe this Count to allege violation of 18 U.S.C. § 1964.

having him disbarred and imprisoned.  Plaintiff requests an injunction and alleges he has been damaged in the amount of $300 billion.

Plaintiff's claims are due to be dismissed for several reasons.  Plaintiff alleges four underlying injuries resulted from the "conspiracy" to cover up art theft – an unfavorable decision from the Department of Labor's Office of Workers' Compensation Programs ("OWCP"), his conviction in the District of Maryland, his disbarment by the Supreme Court of South Carolina, and his failure to recover "$5 billion in stolen art" based upon the decisions of the District Court for the Southern District of New York in the *Johnson v. Smithsonian Institution* cases noted above.  Thus, Plaintiff apparently asks this Court to review a decision made by OWCP under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101, et seq., to find his conviction for mailing a threatening communication to the Secretary of Labor to be invalid, and to reverse various decisions of the Supreme Court of South Carolina and the District Court for the Southern District of New York.  This Court does not have the jurisdiction to do so.

### A.    OWCP's FECA determination (Count I)

Several of Plaintiff's claims refer to the determination as to his disability benefits made by OWCP under FECA, 5 U.S.C. § 8101, et seq.  However, FECA expressly precludes judicial review of such decisions, and thus this Court lacks subject matter jurisdiction to review the decision made by the Department of Labor in Plaintiff's disability case.  *See* 5 U.S.C. § 8128(b); *Southwest Marine, Inc. v. Gizoni,* 502 U.S. 81, 90 (1991) ("FECA contains and 'unambiguous and comprehensive' provision barring any judicial review of the Secretary's determination of FECA coverage.").

The Eleventh Circuit recognizes two instances in which a federal court may exercise jurisdiction over a final decision of the Secretary under FECA – to review charges that the Secretary violated a clear statutory mandate or prohibition, and to consider constitutional claims. *Woodruff v. U.S. Dept. of Labor*, 954 F.2d 634 (11th Cir. 1992). In the instant case, Plaintiff fails to show that he satisfies an exception to the FECA bar. "A mere allegation of a constitutional violation" is not sufficient to avoid the FECA bar. *Rodrigues v. Donovan*, 769 F.2d 1344, 1348 (9th Cir. 1985). To the extent Plaintiff is alleging a due process violation, he has failed to allege facts to support such a claim. Plaintiff states he was provided an opportunity to appeal his claim and elected to have a hearing before the Branch of Hearings and Review (Doc. #11, at 4). However, Plaintiff also states he "refused to participate in the hearing" because it was a telephone hearing (Doc. #11 at 4-5). The regulations governing FECA claims expressly provide that "at the discretion of the hearing representative," a hearing before the Branch of Hearings and Review "may be conducted by telephone or teleconference." 20 C.F.R. § 10.615; *see also Sanford v. Comm'r of IRS,* 283 Fed. App'x 780, 783 (11th Cir. 2008) (holding plaintiff's due process rights were not violated when the IRS offered him a telephone hearing only, rather than a face-to-face hearing); *Bigby v. INS*, 21 F.3d 1059, 1064 (11th Cir. 1994) (holding agency's decision to hold telephonic hearing entitled to deference). Plaintiff further alleges the determination of benefits was motivated by, and made in retaliation for, Plaintiff not dropping his claim for interest. FECA does not contain a provision allowing for the payment of interest on benefits. *See Proctor v. United States*, 95 Fed.Cl. 437, 442 (Fed. Cl. 2010) ("The Secretary is precluded from awarding interest to employees under FECA because there is no statutory waiver of sovereign immunity to permit the award of interest."); *Ralph*

*v. Moody*, 42 ECAB 364, 370 (1991) ("There is no provision in the Act for payment of interest on awards of compensation.").

Plaintiff also alleges violation of the Back Pay Act, 5 U.S.C. § 5596. However, the Court cannot discern how this statute applies to Plaintiff's allegations regarding his FECA determination, and Plaintiff does not elaborate.[10] The Back Pay Act awards back pay and interest to correct an unjustified personnel action that deprived an employee of pay. *Estate of Schultz v. Potter*, 349 Fed. App'x 712, 718 (3d Cir. 2009) (citing 5 C.F.R. §§ 550.805-550.806). FECA payments are not awarded "as a result of an unjustified or unwarranted personnel action," but as compensation for work-related injuries. 5 U.S.C. § 5596(b)(1). Thus, it is unclear how Plaintiff's allegations concerning the determination of his FECA benefits relate to the Back Pay Act.

Moreover, it does not appear venue is proper in the Middle District of Florida. Section 1391 of Title 28, provides that a civil action, in which an officer or employee of the United States, an agency of the United States, or the United States itself is named as a defendant, may be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action. 28 U.S.C. § 1391(e), *amended by* Pub. L. No. 112-63, 125 Stat. 758 (Dec. 7, 2011); *see also Sierra Club v. Leathers*, 754 F.2d 952, 955 (11th Cir. 1985). Plaintiff states his disability claim is administered by Kimberly A. Murray-Williams, a claims examiner in the Jacksonville, Florida Office of the Department

---

[10] Plaintiff's only reference to this statute is in the heading for Count I.

of Labor. However, the conduct alleged in his Second Amended Complaint appears to have no connection to this District. The allegations regarding the determination of his FECA claim relate to the actions of a Ms. DeCarlo. Defendants submitted an affidavit from Antonio A. Rios, the Deputy Director for Federal Employees' Compensation within OWCP, who stated Linda DeCarlo is a former OWCP Division of Federal Employees' Compensation employee "who has never worked in or as a DFEC supervisor in the Jacksonville Field Office" (Doc. #27-1, at 2).[11] Furthermore, the documents related to Gibbs' FECA determination, attached as exhibits to Defendants' Motion to Dismiss, do not support any connection to Jacksonville, Florida (*see* Docs. #27-1 through #27-6). For example, a letter written to Gibbs from Linda DeCarlo contains a letterhead with a Washington, D.C. address (Doc. #27-5, at 9), and letters from claims examiner Kimberly A. Williams and hearing representative Paula Strange contain letterhead with a London, Kentucky address (Doc. #27-5 at 2, 11). The only reference to Jacksonville is contained in a letter from Senior Claims Examiner Analisa Kobelt-Walker who directs Gibbs to send a check or money order for overpayment to: "US Dept. of Labor, *DFEC Jacksonville*, P.O. Box 403376, Atlanta, GA 30384-3376" (Doc. #27-4, at 49) (emphasis added). This one, ambiguous reference to Jacksonville does not support Plaintiff's assertion that venue is proper in this District. *See* 28 U.S.C. § 1391(e) (venue lies where a "*substantial* part of the events or omissions giving rise to the claim occurred") (emphasis added).

### B.  Alleged Retaliation for Whistle Blower Activities (Count II)

---

[11] "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Secs.*, LLC, 600 F.3d 1334, 1337 (11th Cir. 2010).

Plaintiff alleges he is a whistle blower and cites to the False Claims Act ("FCA"). The FCA provides a penalty and treble damages against any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment." 31 U.S.C. § 3729(a)(1)(A). The FCA allows a private cause of action only by means of a *qui tam* suit to recover "for harm done to the Government." *See Woods v. Empire Health Choice, Inc.,* 574 F.3d 92, 97 (2d Cir.2009). Nonetheless, Plaintiff alleges he became a whistle blower in 1986, and his claim is thus time-barred under the FCA's statute of limitations. *See* 31 U.S.C. § 3731(b).[12] Moreover, the allegations of the Second Amended Complaint are insufficient to establish that venue properly lies with the Middle District of Florida. Again, the conduct alleged seems to have no connection to this District. *See* 28 U.S.C. § 1391(e); *Sierra Club*, 754 F.2d at 955.

## C.    Negligence allegations (Count III)

Plaintiff alleges several individuals stole Plaintiff's medical records from the State of Connecticut for the purpose of causing Plaintiff's mental breakdown and to have Plaintiff disbarred and imprisoned, which is somehow related to the alleged art conspiracy (*see* Doc. #11 at 6). Plaintiff alleges the Secretary of Labor "breached her duty to protect

---

[12] Section 3731(b) provides:

A civil action under section 3730 may not be brought–
(1) more than 6 years after the date on which the violation of section 3729 is committed, or
(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

31 U.S.C. § 3731(b). Under either scenario, Plaintiff's action is time-barred.

Plaintiff" as a whistle blower and this directly and proximately caused Plaintiff's psychological breakdown and conviction. *Id.* at 7-8. Plaintiff alleges "but for their improper actions, Plaintiff would have recovered $5 billion in stolen art." *Id.* at 8. This latter claim appears nonsensical in view of the court opinions in the *Johnson v. Smithsonian* cases.[13]

Actions for negligence against the United States fall under the Federal Tort Claims Act, which requires Plaintiff exhaust administrative remedies by presenting an administrative claim to the appropriate federal agency. 28 U.S.C. § 2675(a).[14] Plaintiff has failed to allege he has met this prerequisite. Morever, Plaintiff has failed to provide sufficient information for the Court to determine if the statute of limitations has expired. *See* 28 U.S.C. § 2401 (providing "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues"). Unless a plaintiff complies with these requirements, a district court lacks subject matter jurisdiction over a plaintiff's FTCA claim. *See United States v. Kubrick,* 444 U.S. 111, 117-18 (1979). The burden is on the plaintiff to plead and prove compliance. *In re Agent*

---

[13] See *Johnson v. Smithsonian Inst.*, 9 F. Supp. 2d 347 (S.D.N.Y. 1998); 189 F.3d 180 (2d Cir. 1999); 80 F. Supp. 2d 197 (S.D.N.Y. 2000); 4 Fed. App'x 69 (2d Cir. 2001); 2007 WL 3118866 (S.D.N.Y. Oct. 24, 2007).

[14] Section 2675(a) reads in pertinent part:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).

*Orange Prod. Liab. Litig.,* 818 F.2d 210, 214 (2d Cir.1987), *cert. denied,* 484 U.S. 1004 (1988). Plaintiff has not pled and proven compliance with the statutory mandates. Finally, the allegations are insufficient to establish that venue is properly with the Middle District of Florida. Once again, the conduct alleged appears to have no connection to this District. *See* 28 U.S.C. § 1391(e); *Sierra Club*, 754 F.2d at 955.

### D. Conspiracy claims and RICO (Counts IV and V)

The bulk of Plaintiff's complaint refers to an alleged art conspiracy involving the actor Bill Cosby, congressmen, the Department of Justice, and the Harmon Foundation. Plaintiff alleges Defendants conspired to profit from stolen artwork and injured Plaintiff by having him disbarred and imprisoned. Plaintiff alleges, "AUSA Corwin combined and conspired with Investigator Ryan and Ms. DeCarlo for the purpose of denying Plaintiff his disability benefits awarded by the Secretary" (Doc. #11 at 9).

These claims are subject to dismissal for failure to state a claim upon which relief can be granted. The Supreme Court has held § 1983 claims by a convicted plaintiff for alleged constitutional harms are barred if recovery on the claim would necessarily imply that the conviction was unlawful. *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994). Although the Eleventh Circuit has not addressed the issue, a number of courts have held that the rule established by the Supreme Court in *Heck* applies to civil RICO claims. *See e.g., King v. Farris,* No. 5:08-CV-186(CAR), 2008 WL 5115062 (M.D. Ga. Dec. 3, 2008) (dismissing RICO claim where Plaintiff did not claim any injury apart from his conviction); *Harrison v. Grand Jurors*, No. 3:05-CV-348/MCR/MD, 2006 WL 354218, at *3 (N.D. Fla. Feb. 13, 2006 (*"Heck* applies equally to civil RICO actions where the RICO claim collaterally attacks a criminal conviction."); *Williams v. Hill,* 878 F.Supp. 269 (D.D.C.1995),

*aff'd,* 74 F.3d 1339 (D.C. Cir.1996) (concluding that *Heck* was applicable to civil RICO action); *Hermansen v. Chandler,* 211 F.3d 1269 (Table), 2000 WL 554058, at *2 (6th Cir.2000) (unpublished opinion) ("This court has consistently applied the [ *Heck* ] princip[le] to civil actions under RICO ....") (citing other unpublished Sixth Circuit cases); *but see Hunter v. Gates,* No. CV99-12811, 2001 WL 837697, at *3-4 (C.D. Cal. Apr. 16, 2001) (holding the *Heck* rule does not apply to civil RICO claims).

Plaintiff's conspiracy and RICO claims also seek to impeach the determination as to his disability benefits made by OWCP under the Federal Employees' Compensation Act ("FECA").  However, as stated previously, Plaintiff has failed to show that he satisfies an exception to the FECA bar, and this Court therefore lacks subject matter jurisdiction to review the decision made by the Department of Labor.

Numerous courts have found Plaintiff's claims regarding a criminal enterprise dedicated to protecting stolen art and a conspiracy to retaliate against him for attempting to recover the stolen art to be without merit.  *Gibbs v. United States*, Civ. Action No. 8:09-cv-1779-PJM (D.Md.) (Doc. #2, Unpublished Order, Jul. 21, 2009); *Gibbs v. United States*, 185 Fed. App'x 258, at *1 (4th Cir. 2006), *cert. denied*, 549 U.S. 1117 (2007); *In the Matter of M. Eugene Gibbs*, 562 S.E.2d 639, 646-47, 647-48 (S.C. 2002); *Gibbs v. United States,* Civ. Action No. 8:02-cv-45-JFM (D.Md.) (Doc. #27), *aff'd*, 45 Fed. App'x 281 (4th Cir. Sept. 9, 2002).

The undersigned similarly finds that Plaintiff's conspiracy and RICO claims are subject to be dismissed for failure to state a claim upon which relief may be granted. "An allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of

agreement at some unidentified point does not supply facts adequate to show illegality."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Here, Plaintiff has failed to

allege sufficient facts to show the existence of a conspiracy to conceal stolen artwork,

imprison him, and deprive him of disability benefits.[15] "Courts may infer from the factual

allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct

rather than the unlawful conduct the plaintiff would ask the court to infer." *Stricker v.

Ganey*, No. 8:09-CV-1875-T-27TGW, 2010 WL 2640320, at *3-4 (M.D. Fla. Jun. 10, 2010)

(citing *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1295 (11th Cir. 2010)).

Moreover, as discussed previously, the events alleged did not occur in the Middle District

of Florida, or within the statute of limitations.

### IV. Motions to Amend

After the Motion to Dismiss was filed, Plaintiff filed a motion to amend attaching the

proposed Third Amended Complaint (Doc. #65)[16] on August 16, 2011. On October 14,

---

[15] The undersigned notes the Department of Labor conducted an investigation into Gibbs' employment status to determine if he had falsely claimed to be receiving no other forms of compensation (*see* Doc. #27-2, Exhibit 5). Pursuant to this investigation, the Department of Labor determined Gibbs was a practicing attorney and managing partner of a law firm in South Carolina during the time period in question. *Id.* at 12.

[16] The proposed amended complaint filed as Doc. #65-1 has several deficiencies in numbering, including two Counts Five and Six. Count Four is out of sequence. The last three counts (Four, Five and Six) (which are after Count Eleven) contain attempted adoption of earlier paragraphs, the exact type of shotgun pleading the Court previously struck from the record (*see* Doc. #5, Court Order).

2011, Plaintiff filed another motion to amend, to which he attached the proposed Fourth Amended Complaint (Doc. #81).[17]

Federal Rule of Civil Procedure 15(a) mandates that a court freely allow amendments to a complaint "when justice so requires." However, the proposed complaints contain similar deficiencies including lack of subject matter jurisdiction, lack of proper venue, continued shotgun pleadings, and failure to state a plausible claim. Furthermore, as noted above, many of the claims have been raised previously in cases dismissed in other jurisdictions. "Although the federal rules generally favor a liberal amendment policy, justice does not demand that [a plaintiff] be given leave to append frivolous or repetitive allegations to her complaint at any stage in the proceedings." *Coleman v. Ramada Hotel Operating Co.*, 933 F.2d 470, 473 (7th Cir. 1991). A court need not allow amendment where amendment would be futile. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).

The allegations and arguments contained in the proposed Fourth Amended Complaint relate to the same issues contained in the Second Amended Complaint – the art conspiracy, Plaintiff's disbarment and criminal conviction, and the FECA determination. However, Plaintiff presents no new facts or arguments which would correct the deficiencies related to subject matter jurisdiction, failure to state a claim upon which relief may be

---

[17] As noted earlier, because Plaintiff subsequently filed an Amended Motion for Leave to File an Amended Complaint (Doc. #81), the Court deems the earlier motion (Doc. #65) to be <u>moot</u>.

granted, venue, or the time limitations previously discussed.  Moreover, the Fourth Amended Complaint contains new counts for replevin, conversion, constructive trust, and unjust enrichment (Counts I-V), wherein Plaintiff requests return of the artwork allegedly stolen.

Pursuant to the Rooker–Feldman Doctrine there is a lack of subject matter jurisdiction over claims regarding artwork that was the subject of a 1956 New York State Supreme Court determination.[18]  Furthermore, Plaintiff lacks standing to bring such claims, as his only relationship to the artwork is from his acting as legal counsel for the artist's heirs.

The Fourth Amended Complaint also contains counts for conversion, defamation, and assault and battery (Counts II, VI and X), which are governed by the Federal Tort Claims Act, and Plaintiff fails to satisfy jurisdictional requirements to bring an FTCA claim for the same reasons discussed previously.  Plaintiff also alleges two breach of contract claims (Counts VII and VIII), but such claims, if properly stated, must be brought in the Court of Federal Claims.  *See* 28 U.S.C. §1491. The remaining counts (Counts IX-XV) for due process and equal protection, false imprisonment, whistle blower, negligence, conspiracy, and RICO are deficient for the reasons previously discussed.

The undersigned finds amendment would be futile.  *See Baker v. Library of Congress*, 260 F.Supp.2d 59, 68 (D.D.C. 2003) (holding proposed amendment would be

---

[18] The Rooker–Feldman Doctrine stands for the proposition that federal district courts do not have jurisdiction to review state court judgments. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) (holding only the Supreme Court can entertain an appeal to reverse or modify a state court judgment) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983) (explaining that federal courts do not have jurisdiction over claims which are "inexplicably intertwined" with prior state court determinations).

futile where plaintiff's motion for leave to file amended complaint contained no new facts or arguments that would defeat defendant's arguments for dismissal).

### V. Conclusion

"A plaintiff asserting fantastic or delusional claims should not, by payment of a filing fee, obtain a license to consume unlimited judicial resources and put defendants to effort and expense." *Tyler v. Carter*, 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd* 41 F.3d 1500 (2d Cir. 1994). Plaintiff alleges a grand conspiracy between several government agencies and individuals across the United States and occurring over the course of several decades. Plaintiff's claims lack a basis in reality and stop well short "of the line between possibility and plausibility." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Accordingly, the undersigned respectfully **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** and the motions to amend the complaint be **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida this 17th day of January, 2012.

*Thomas E. Morris*

**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to:
Hon. Marcia Morales Howard
United States District Judge

All Counsel of Record

*Pro Se* Plaintiff