**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

M. EUGENE GIBBS,

        Plaintiff,

vs.                                 Case No. 3:11-cv-75-J-34TEM

UNITED STATES OF AMERICA, et al.,

        Defendants.

_____

## ORDER

This case is before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 27; Motion to Dismiss), Plaintiff's Motion for Leave to Amend the Complaint (Doc. 65), and Plaintiff's Amended Motion for Leave to Amend the Complaint. (Doc. 81)(collectively "Motions to Amend"). The Motion to Dismiss was referred to the Honorable Thomas E. Morris, United States Magistrate Judge, for a Report and Recommendation regarding an appropriate resolution of the motion, (Doc. 80; 10/11/11 Order), and the Motions to Amend were referred to Judge Morris for disposition as a nondispositive matter. See Rule 72, Federal Rules of Civil Procedure (Rule(s)); Rule 6.01, Local Rules of the United States District Court for the Middle District of Florida ("Local Rules") On January 17, 2012, the Magistrate Judge entered a Report and Recommendation (Doc. 89; Report), recommending that Defendants' Motion to Dismiss be granted, and Plaintiff's two Motions to Amend be denied. Report at 23. Plaintiff M. Eugene Gibbs ("Gibbs"),[1] proceeding

---

[1]   As noted by the Magistrate Judge, Report at 1, Gibbs referred to himself as "M. Eugene Gibbs" in his original complaint (Doc. 1; Complaint), but has since referred to himself as "M. Eugene Gibbs-Squires" in subsequent filings. (See Doc. 27; 2d Am. Complaint). The Court will continue to refer

(continued...)

<u>pro</u> <u>se</u>, filed an objection to the Report (Doc. 92; Objection), and Defendants filed a response to that Objection. (Doc. 93: Response to Objection).[2]

## I. **Standard of Review**

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). If no specific objections to findings of facts are filed, the district court is not required to conduct a <u>de</u> <u>novo</u> review of those findings. <u>Garvey v. Vaughn</u>, 993 F.2d 776, 779 n.9 (11th Cir. 1993); <u>see</u> <u>also</u> 28 U.S.C. § 636(b)(1). However, the district court must review legal conclusions <u>de</u> <u>novo</u>, even in the absence of an objection. <u>See</u> <u>Cooper-Houston v. S. Ry. Co.</u>, 37 F.3d 603, 604 (11th Cir. 1994); <u>United States v. Rice</u>, No. 2:07-mc-8-FtM-29SPC, 2007 WL 1428615, at *1 (M.D. Fla. May 14, 2007).

In ruling on a motion to dismiss, brought pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009); <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508 n.1 (2002); <u>see also</u> <u>Lotierzo v. Woman's World Med. Ctr., Inc.</u>, 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. <u>See</u> <u>Omar ex. rel. Cannon v. Lindsey</u>, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. <u>Jackson v. Bellsouth Telecomm.</u>, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed,

---

[1](...continued)
to Plaintiff as "Gibbs" and declines to alter the style of the case.

[2]    Plaintiff subsequently filed what he termed "Plaintiff's Amended Reply to Report and Recommendation." (Doc. 94; Reply). The Court declines to consider this filing which it construes as unauthorized reply, filed without first obtaining leave of Court. <u>See</u> Rule 72; Local Rules 3.01(c), 6.02.

while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." See Iqbal, 129 S. Ct. at 1949, 1951. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 1949 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of

Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[3](quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998)(internal citation omitted), overruled on other grounds as recognized in Randall v. Scott, 610 F.3d 701, 706 (11th Cir. 2010)).

"'In ruling on a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.'" Speaker v. U.S. Dep't of Health & Human Servs., 623 F.3d 1371, 1379 (11th Cir. 2010)(quoting SFM Holdings, Ltd. v. Banc of Am. Secs., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010)). Additionally, a court may take judicial notice of and consider documents attached to a motion to dismiss or response, which are public records that are "central" to a plaintiff's claims, without converting the motion to dismiss into a motion for summary judgment. This is so, as long as such documents are "public records that [are] 'not subject to reasonable dispute' because they [are] 'capable of accurate and ready determination by resort to sources whose accuracy [can] not reasonably be questioned.'" Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010)(quoting Fed. R. Evid. 201(b)). Moreover, "a court may take notice of another court's order . . . for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation." United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994).[4]

---

[3]  "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[4]  In his Objection to the Report, Plaintiff disputes the applicability of prior court decisions, relied upon by the Magistrate Judge.  Objection at 1,5.  While the Magistrate Judge attempted to sort through portions of Gibbs's extensive and convoluted litigation history in an effort to make sense of Gibbs's nearly indecipherable claims here, the undersigned focuses narrowly upon the claims made in the
(continued...)

## II.     Discussion

### A.     Defendants' Motion to Dismiss

#### 1.     Count I: FECA Disability Benefits

Count I of Gibbs's Second Amended Complaint is entitled "5 U.S.C. §§ 8123(d) & 5596."[5] In this count, Gibbs focuses on issues related to his claim for disability benefits, and seeks an "injunction" and $400,000 in interest. Complaint ¶¶10-19; see also id. ¶¶ 2, 7. In his general allegations, Gibbs, a former federal employee, alleges that his "disability claim is administered at the Department of Labor [DOL] field office located in Jacksonville, Florida," and that "Defendants are sued . . . to recover disability benefits Plaintiff loss [sic] as a direct result of improper actions taken against Plaintiff: including but not limited to retaliation against Plaintiff for demanding his legal rights under 5 U.S.C. §§ 8123(d) and 5596." Id. at ¶¶ 2, 7. Though somewhat garbled, Gibbs's Count I allegations refer to the DOL's mistaken suspension of his disability benefits in 1996 due to Gibbs's failure to attend a medical

---

[4](...continued)
Second Amended Complaint for purposes of addressing the Motion to Dismiss before it. Accordingly, the Court will adopt only those portions of the Report specified.

[5] 5 U.S.C. § 8123(d), is a section found in the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8101, et seq. It states that:

> (d)   If an employee refuses to or obstructs an [physical] examination, his right to compensation under this subchapter is suspended until the refusal or obstruction stops. Compensation is not payable while a refusal or obstruction continues, and the period of refusal or obstruction is deducted from the period for which compensation is payable to the employee.

5 U.S.C. § 8123(d).

5 U.S.C. § 5596, is called the Back Pay Act. "The purpose of this statute is to put a [Government] employee who was the victim of an unjustified or unwarranted personnel action in the same position as he would have been in had the erroneous action not occurred." Wells v. F.A.A., 755 F.2d 804, 807 (11th Cir. 1985).

examination "with a doctor [sic] did not exist." Id. ¶¶ 10, 13. Gibbs alleges that the DOL "awarded payment for the period of March 31, 1996 to April 30, 2002 = $174,815.17" to correct the error. Id. ¶¶ 13, 14. Gibbs then alleges that the DOL demanded "repayment of $34,000 . . . in retaliation for Plaintiff not dropping his claim for interest - about $400,000", apparently on the disability claim awarded for the 1996 through 2002 period. Id. ¶ 15. The balance of Gibbs's Count I allegations takes issue with the DOL telephonic hearing process, and the DOL's monthly deduction of disability payments, beginning in March 2010. Id. ¶¶ 16-18. Gibbs seeks an "injunction" to "prevent . . . the illegal taking of Plaintiff's disability benefits," and $400,000, presumably referring to his "claim for interest - about $400,000." Id. ¶¶ 15, 19.

Defendants seek to dismiss Count I of the Second Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), arguing that Gibbs is challenging the DOL's determination and processing, pursuant to the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8101, et seq, of his disability benefit claim. Defendants contend that the Court does not have jurisdiction to review the DOL's decision. Motion at 10-11, 13-17. In support of this contention, Defendants have submitted an extensive collection of documents related to Gibbs's FECA disability claim, dating back to 1987.

Rule 12(b)(1) provides for the dismissal of a case when the court determines it lacks subject matter jurisdiction over the action. "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously ensure that jurisdiction exists over a case." Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be founded on either a "facial" or "factual" challenge to the court's jurisdiction:

> Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion. Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits.

Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990)) (internal citations omitted). "In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002). Defendants mount a factual attack to the existence of subject matter jurisdiction as to Count I of the Second Amended Complaint. Accordingly, the Court may consider its subject matter in fact, as established by the Defendants' submissions, and if it determines that it lacks subject matter jurisdiction, the Amended Complaint will be dismissed as the Court "is powerless to continue." Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999).

Gibbs's lengthy FECA disability file includes a July 17, 2009 letter from the DOL Employment Standards Administration, Office of Workers' Compensation Programs (OWCP) to Gibbs, informing Gibbs that it had determined that he had been overpaid disability payments in the amount of $32,078.57 based on DOL's finding that he had "misrepresented and concealed business activity and income" in 1995. (Doc. 27-4 at 49; 07/17/09 OWCP Letter (Rios Aff. Ex. 19)). The letter advised that Gibbs could request a "pre-recoupment hearing before a representative of the Branch of Hearings and Review." Id. On August 14,

2009, Gibbs requested a hearing, (Doc. 27-4 at 56; 08/14/09 Gibbs Request (Rios Aff. Ex. 20)), and on October 1, 2009, the OWCP informed Gibbs "an informal hearing" would be held by telephone before an OWCP Hearing Representative on November 12, 2009. Gibbs was provided a toll-free number to call at the designated time. (Doc. 27-5 at 2; 10/01/09 OWCP Notice of Hearing (Rios Aff. Ex. 21)). The OWCP Hearing Representative determined that Gibbs had caused an overpayment in his FECA disability payments of $32,078.57, and that the overpayment would be recouped from his continuing FECA disability payments at a rate of $1,400 per month. The Hearing Officer indicated that Gibbs did not attend the telephonic hearing, nor did he offer any explanation for not doing so. (Doc. 27-5 at 27; 02/01/10 OWCP Decision (Rios Aff. Ex. 25)). Gibbs appealed the OWCP Decision to the DOL Employees' Compensation Appeals Board (ECAB), (Doc. 27-5 at 34; ECAB Appeal (Rios Aff. Ex. 26)), and on March 23, 2011, the ECAB affirmed the OWCP Decision. (Doc. 27-1 at 7; Rios Aff. ¶ 29).

As recently noted by the Eleventh Circuit:

> The FECA is a comprehensive and exclusive workers' compensation scheme for federal civilian employees who are injured or killed while performing their work duties. Noble v. United States, 216 F.3d 1229, 1234 (11th Cir. 2000). Central to the FECA's statutory scheme is the Secretary of Labor (the "Secretary"), who has the authority to administer and decide all questions arising under the FECA. Id. The Secretary has delegated its authority to oversee the FECA's administration and implementation to the Director of the OWCP. Id.. The Secretary retains the ability to review an award for or against payment of benefits at any time on his own motion or by application. 5 U.S.C. § 8128(a).

> However, the FECA bars judicial review of the Secretary's decision allowing or denying an award of benefits. 5 U.S.C. § 8128(b). The Supreme Court has noted that the "FECA contains

8

an 'unambiguous and comprehensive' provision barring any judicial review of the Secretary of Labor's determination of FECA coverage." <u>Sw Marine, Inc. v. Gizoni</u>, 502 U.S. 81, 90 (1991)(citation omitted). Moreover, "[c]onclusions of law and fact made by the Secretary or the [Employees' Compensation Appeals Board] are also immune from judicial review." <u>Woodruff v. U.S. Dep't of Labor</u>, 954 F.2d 634, 637 (11th Cir. 1992)(citation omitted). However, there are two instances in which a federal court may exercise jurisdiction over a final decision of the Secretary under the FECA, namely, when (1) a clear statutory mandate or prohibition has been violated, or (2) there is a colorable constitutional claim. <u>Id.</u> at 639-40.

<u>Gilmore v. Dir., U.S. Dep't of Labor, Office of Workers Comp.</u>, No. 11-12747, 2012 WL 360469, at *2 (11th Cir. Feb. 6, 2012).

Gibbs's claim in Count I falls squarely within the category of claims challenging FECA benefits decisions that are specifically foreclosed by the FECA statutory scheme and the United States' sovereign immunity. Gibbs fails to allege any constitutional or statutory basis for bringing his claim within the narrow exception to the FECA's prohibition of judicial review. First, Gibbs fails to adequately allege how the scheduled recoupment hearing before the Branch of Hearings and Review which was set to be held by telephone, <u>see</u> 2d Am. Complaint ¶ 17, violates any clear statutory mandate or the Constitution, presumably the right to procedural due process. Indeed, such a telephone hearing is contemplated by the OWCP regulations, and thus, Gibbs has failed to allege how the offer of a telephonic recoupment hearing violates a clear statutory mandate. <u>See</u> 20 C.F.R. § 10.615 (2011)("At the discretion of the hearing representative, an oral hearing may be conducted by telephone, teleconference, video conference or other electronic means."); <u>see also</u> 20 C.F.R. § 10.615 (2009). Nor does Gibbs' complaint about the offer of a telephone hearing transform this garden variety claim for benefits into one raising constitutional procedural due process

concerns. "[T]he Supreme Court has held that '[t]he fundamental requirement of due process is an opportunity to be heard "at a meaningful time and in a meaningful manner."'" <u>Gilmore</u>, 2012 WL 360469, at *2 (quoting <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976)(citation omitted)); <u>see</u> <u>Sanford v. Comm'r of IRS</u>, 283 F. App'x 780, 783 (11th Cir. 2008)(where statute did not specify that hearing must take place in person, applicable regulations specifically provided that a face-to-face hearing is not required, and tax petitioner failed to state any reason why a telephone conference was insufficient, scheduled telephone hearing did not violate petitioner's due process rights); <u>compare</u> <u>Rodrigues v. Donovan</u>, 769 F.2d 1344, 1348 (9th Cir. 1985)(plaintiff may have a cognizable due process claim given the Secretary's failure to provide a hearing after suspension of benefits, despite plaintiff's request for one). Gibbs has not alleged a deprivation of the opportunity to notice or to a hearing; indeed, his allegations clearly set forth that he was accorded both. 2d Am. Complaint ¶¶ 16-17 (""Plaintiff was provided an opportunity to appeal . . ."). For the same reasons, Gibbs's allegation that the DOL's recoupment decision was "in retaliation" for Gibbs's claim of interest on disability benefits withheld and then paid back, 2d Am. Complaint ¶15, also fails to state a claim beyond challenging the DOL FECA disability determination, as he asserts no statutory or constitutional violation.[6] Finally, neither Gibbs's citation to the Back Pay Act, 5

---

[6]  Indeed, the fact that Gibbs has failed to identify any statute or constitutional provision that waives the United States' sovereign immunity from payment of interest on retroactive FECA disability payments significantly undermines his allegation of retaliation. <u>See</u> <u>United States v. Aisenberg</u>, 358 F.3d 1327 (11th Cir. 2004)("[i]t is well established that 'interest cannot be recovered in a suit against the [United States] Government in the absence of an express waiver of sovereign immunity from an award of interest'" (citation omitted)); <u>see also</u> <u>Proctor v. United States</u>, 95 Fed. Cl. 437, 440-41 (2010)(FECA does not expressly waive sovereign immunity to provide for the award of interest); <u>Matter of Moody</u>, 42 E.C.A.B. 364, 370-71, 1991 WL 639441 (E.C.A.B. Feb. 5, 1991)(DOL Employees' Compensation Appeals Board states that there is no provision in the FECA for payment of interest on retroactive awards of compensation).

10

U.S.C. § 5596 nor his repeated reference to "personnel decision[s]," 2d Am. Complaint ¶¶ 12,14, transform his FECA disability claim into a Back Pay Act claim for purposes of any entitlement to interest on the retroactive payment of his FECA disability benefits.[7]

For the foregoing reasons, the Court will adopt the Report's recommended finding that this Court lacks subject matter jurisdiction over Count I of the Second Amended Complaint.

---

[7] Section 5596(b)(1) of the Back Pay Act provides that:

> An employee of an agency, who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee . . . is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect . . . an amount equal to all or any part of the pay . . . and reasonable attorney fees.

5 U.S.C. § 5596(b)(1).

"The Back Pay Act endeavors 'to make workers whole who [have] suffered on account of unfair labor practices.'" Estate of Schultz v. Potter, 349 F. App'x 712, 718 (3d Cir. 2009). "FECA/OWPC wage-replacement payments, a form of workers' compensation, arise from a separate statutory scheme - FECA - and do not fall into either the 'outside earnings' or 'erroneous payments' categories of the Back Pay Act. . . . [T]he FECA/OWPC payments were not received . . . 'as a result of the unjustified or unwarranted personnel action,' but as compensation for [a] work-related injury." Schultz, 349 F. App'x at 718 (citation omitted).

<u>See</u> Report at 12-14.[8]  Accordingly, the Motion to Dismiss is due to be granted as to this claim and Count I dismissed.

### 2.    **Count II: False Claims Act**

Count II of the Second Amended Complaint is entitled: "Whistleblower [False Claims Act]."  2d Am. Complaint at 5.  In this claim, Gibbs alleges that "[o]n or about February 1986," he became a "Whistle blower," "'Blowing the Whistle'" on the "Baltimore DCASMA" (Defense Contract Administration Services Management Area) for its alleged misuse of employee travel funds. <u>Id.</u> ¶¶ 20, 21 ("recovering travel funds for employees").  Gibbs alleges that he was "elevated to a position designed to secure Plaintiff a promotion," but was removed from that position two hours later.  <u>Id.</u> ¶ 21.a.  He asserts that after filing a complaint, he was offered another position, but was then "informed by his supervisor the offer was made to place Plaintiff in a position where Plaintiff could be charged with misconduct and/or be arrested." <u>Id.</u> ¶ 22.  Gibbs contends that the "illegal retaliation against Plaintiff" by

---

[8]   The Court declines to adopt those portions of the Report which seemingly recommend that Gibbs's Second Amended Complaint should be dismissed for improper venue.  Report at 14-15, 16, 18, 20.  While the basis for venue in this Court is indeed, questionable, Defendants did not raise lack of venue as a basis for dismissal in their Motion, noting only that former DOL employee Linda DeCarlo, who is mentioned in the Second Amended Complaint, never worked in Jacksonville, Florida. Motion at 1; <u>see also</u> Objection at 6.

"[V]enue is a personal privilege to be raised by motion and the privilege may be waived." <u>Harris Corp. v. Nat'l Iranian Radio and Television</u>, 691 F.2d 1344, 1349 (11th Cir. 1982).  Indeed, Rule 12(h)(1) provides that some defenses, including improper venue, are waived by failing to raise them in the initial Rule 12 motion.  <u>Aero Techs., LLC v. Lockton Cos. Int'l, Ltd.</u>, 406 F. App'x 440, 441 (11th Cir. 2010)(citing Rule 12(h)(1) and 12(b)(2)-(5)); <u>see also</u> <u>Lipofsky v. N.Y. State Workers Comp. Bd.</u>, 861 F.2d 1257, 1258 (11th Cir. 1988)(improper venue defense is waived when a defendant files a responsive pleading or Rule 12 motion failing to assert it).  "In the absence of a waiver, a district court may raise on its own motion an issue of defective venue . . . ; but the court may not dismiss without first giving the parties an opportunity to present their views on the issue."  <u>Lipofsky</u>, 861 F.2d at 1258.

Here, for whatever reason, Defendants have chosen not to raise the issue of venue in their motion, and the Court declines to do so in the face of this apparent waiver.

"Plaintiff's agency" has "cost the American taxpayers $1 Trillion over the past 25 years!" Id. ¶ 23. Gibbs seeks reinstatement to his position "at the Defense Logistics Agency (Department of Defense)," and damages "not less than $300 Billion." Id. ¶ 23.a.

The purpose of the False Claims Act (FCA) is to encourage private individuals, who are aware of fraud being perpetrated against the Government, to bring such information forward, while preventing opportunistic suits by individuals who hear of fraud through public sources but played no part in exposing it. Klusmeier v. Bell Constructors, Inc., No. 10-15657, 2012 WL 555736, at *2 (11th Cir. Feb. 21, 2012)(citing Cooper v. Blue Cross & Blue Shield of Fla., Inc., 19 F.3d 562, 565 (11th Cir. 1994)); United States ex rel. Williams v. NEC Corp., 931 F.2d 1493, 1496-97 (11th Cir. 1991). The FCA empowers private persons ("relators") to bring suit on their own and on the government's behalf, "with the promise of a share of the damages recovered serving as incentive for such private enforcers." NEC Corp. at 1497; see 31 U.S.C. § 3730(b)(1). Gibbs apparently seeks to state a claim under the anti-retaliation provision of the FCA. 31 U.S.C. § 3730(h).[9]

> Under this section, an employee has a retaliation claim against [his] employer if [he] suffers adverse job consequences as a result of [his] "efforts to stop 1 or more violations" of the False Claims Act. 31 U.S.C. § 3730(h). Protected conduct is conduct that "furthered an action filed or to be filed" under the False Claims Act. Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176, 187 (3d Cir. 2001)(internal quotations omitted). Thus, "[i]f

---

[9] Congress amended the FCA in 1986 to add Section 3730(h) creating a cause of action against employers who retaliate against qui tam relators. Graham Cnty. Soil and Water Conservation Dist. v. United States ex rel. Wilson, 130 S.Ct. 1396, 1415 (2010); see Pub. L. 99-562, §§ 3, 4, Oct. 27, 1986, 100 Stat. 3154, 3157. The Court will assume, for purposes of considering Defendants' Motion to Dismiss, that the conduct about which Gibbs complains in Count II, occurred after the enactment and effective date of Section 3730(h). Congress's 2009 amendment to Section 3730(h) only applies to conduct on or after May 20, 2009. See United States ex rel. Sanchez v. Lymphatx, Inc., 596 F.3d 1300, 1303 n.5 (11th Cir. 2010).

> an employee's actions, as alleged in the complaint, are sufficient
> to support a reasonable conclusion that the employer could have
> feared being reported to the government for fraud or sued in a
> qui tam action by the employee, then the complaint states a
> claim for retaliatory discharge under § 3730(h)." United States
> ex rel. Sanchez v. Lymphatx, Inc., 596 F.3d 1300, 1304 (11th Cir.
> 2010).

United States ex rel. Gatsiopoulos v. Kaplan Career Inst., No. 09-21720-CIV, 2010 WL 5392668, at *6 (S.D. Fla. Dec. 22, 2010).

While a federal government employee, in certain circumstances, may file an FCA qui tam action, NEC Corp., 931 F.2d at 1501-02, 1504; see also United States ex rel. Holmes v. Consumer Ins. Group, 318 F.3d 1199, 1209-1214 (10th Cir. 2003), a federal employee, stands on different footing than a privately employed citizen when it comes to an FCA retaliation claim. "The cornerstone of the [Civil Service Reform Act's (CSRA)] protections is the aggrieved employee's right to seek review of adverse agency action in the Merit Systems Protection Board (MSPB). 5 U.S.C. § 7701." LeBlanc v. United States, 50 F.3d 1025, 1029 (Fed. Cir. 1995). Because Gibbs was employed as a civilian employee by the Department of Defense, the CRSA applies to disputes arising out of his employment. See 5 U.S.C. § 2302(a)(2)(B); Steele v. United States, 19 F.3d 531, 532 (10th Cir. 1994). The CSRA was enacted to provide a "comprehensive framework for handling the complaints of civil service employees faced with adverse personnel decisions." Ayrault v. Pena, 60 F.3d 346, 347 (7th Cir. 1995)(citing United States v. Fausto, 484 U.S. 439 (1988)). Nothing about the FCA's anti-retaliation provision changes that preemption; the civil remedy provided in the FCA's anti-retaliation provision, § 3730(h), does not apply to federal employees, whose exclusive remedy is under the CSRA. See Rockefeller v. Abraham, 23 F. App'x 893, 896 (10th Cir.

2001); LeBlanc, 50 F.3d at 1029-1030; Humphrey v. Napolitano, No. 11-20651-CIV, 2011 WL 4527451, at *5 (S.D. Fla. Sept. 28, 2011)(CSRA provides the exclusive remedy for federal employees who suffer retaliation as a result of whistleblowing); see also Ferry v. Hayden, 954 F.2d 658, 661 (11th Cir. 1992)("[t]he CSRA specifically lists reprisal for 'whistleblowing' as a 'prohibited personnel practice'" (citing 5 U.S.C. § 2302(b)(8)(A)).  Gibbs's allegation that he was transferred to another position in retaliation for his whistle-blowing activities arises out of an allegedly adverse employment decision made by his supervisors, and thus, falls squarely with the scope of the CSRA.  The remedies set forth in the CSRA are the exclusive remedies for evaluating adverse personnel actions against federal employees.  Thus, it appears that the Court lacks subject matter jurisdiction to consider Gibbs' "retaliation" claim.[10]

Notwithstanding the Court's conclusion that it lacks subject matter jurisdiction, Gibbs's Count II claim is barred because he failed to plead that he properly exhausted the required administrative remedies, by not timely filing an appeal of his personnel transfer with the MSPB.  An employee's failure to exhaust his administrative remedies under the CSRA precludes judicial review of his allegations of improper agency personnel action.  Ferry, 954 F.2d at 661.  The Court finds that Gibbs has failed to allege or establish that he failed to properly exhaust his administrative remedies, further precluding federal court jurisdiction.

---

[10]  In so holding, the Court does not in any way suggest that Gibbs stated a claim that he was engaged in "protected conduct," or that he could have brought a False Claims Act qui tam action against the United States regarding the alleged use of employee travel funds.

See Stevens v. United States, Civ. A No. 94-D-1369-E, 1995 WL 577682, at *4 (M.D. Ala. Aug. 24, 1995).[11]

For the foregoing reasons, the Court determines that Count II of Gibbs's Second Amended Complaint is due to be dismissed.

### 3.   **Count III: Negligence**

Count III of Gibbs's Second Amended Complaint is labeled as one for "Negligence." The allegations are rather garbled, asserting that government officials representing the "Smithsonian Institution," who opposed him in a 1996 lawsuit brought in New York "to recover more than 3,000 works of art by the late African American Artist William H. Johnson"

---

[11]   Because the Court has determined that it does not have subject matter jurisdiction over Count II of the Second Amended Complaint, it need not reach the issue of whether Gibbs's claim - which appears to be based upon conduct that occurred 25 years ago, see 2d Am. Complaint ¶¶ 20-23, was timely filed. The Defendants did not raise statute of limitations as a basis for dismissal of Count II. Motion at 19-20. Nevertheless, the Magistrate Judge determined Count II was time-barred under the FCA's statute of limitations. Report at 16 (citing 31 U.S.C. § 3731(b)). The Court specifically declines to adopt this portion of the Report.

The Court notes that Section 3731(b) does not apply to an FCA retaliation claim. See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 545 U.S. 409, 422 (2005)(noting that the six-year statute of limitations in the FCA found at 31 U.S.C. § 3731(b) did not govern FCA civil actions for retaliation brought pursuant to § 3730(h)); Riddle v. Dyncorp Int'l Inc., 666 F.3d 940, 941-42 (5th Cir. 2012). However, prior to 2010, the FCA contained no statute of limitations for a § 3730(h) retaliation claim. In the absence of an express limitations period, the Supreme Court directed that the "most closely analogous state statute of limitations" should apply to FCA retaliation claims. Graham Cnty., 545 U.S. at 422; see also Foster v. Savannah Commc'n, 140 F. App'x 905, 908 (11th Cir. 2005)(the most closely analogous state limitations period, rather than the six-year statute of limitations in the FCA applies to an FCA retaliation claim (citing Graham Cnty., 545 U.S. at 422 (2005)). In 2010, Congress amended § 3730(h) to provide an express three-year statute of limitations for FCA retaliation claims. See 31 U.S.C. § 3730(h)(3); see Lindsay v. Tech. Coll. Sys. of Ga., No. 1:09-CV-2133-JEC, 2011 WL 1157456, at *6 n.6 (N.D. Ga. March 29, 2011)(citing Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub.L. No. 111-203, 124 Stat. 1376 (July 21, 2010)). It is not clear, however, whether the 2010 amendment is retroactive to conduct pre-dating 2010. Id.; see also United States ex rel. Berglund v. Boeing Co., No. 3:02-cv-193-AC, _ F.3d _, 2011 WL 6182109, at *9-11 (D. Or. Dec. 13, 2011); United States ex rel. Dyer v. Raytheon Co., No. 08-10341-DPW, 2011 WL 3294489, at *12 (D. Mass. July 29, 2011); Saunders v. Dist. of Columbia, 789 F. Supp. 2d 48, 51-54 (D.D.C. June 6, 2011).

For the foregoing reasons, the Court does not adopt the FCA statute of limitations portion of the Report. Report at 16.

conspired to cause Gibbs harm. 2d Am. Complaint ¶¶ 24-25. Gibbs alleges that one of the officials, Assistant United States Attorney Neil Corwin, "caused Plaintiff's medical records to be stolen from the State of Connecticut for the purpose of using Plaintiff's medical information to their advantage: to cause Plaintiff's mental breakdown and/or worst [sic]," and provided the records to the Attorney General of South Carolina "in an attempt to have Plaintiff disbarred." Id. ¶¶ 26-27.[12] Gibbs alleges that in 1995, he sought information regarding whether his return to work would disrupt his disability benefits, and that in 1998, the Government "began an investigation of Plaintiff concerning fraud. That Plaintiff was working while receiving disability benefits." Id. ¶¶ 28, 29. Gibbs alleges that "The Secretary breached her duty to Plaintiff: as a Whistleblower the Secretary had a duty to protect Plaintiff," and that as a result of this "breach of duty," Gibbs's work activities were investigated causing Gibbs to suffer "a psychological breakdown, being arrested, imprisoned and tortured," and preventing him from recovering the "stolen art." Id. ¶ 32. Gibbs seeks damages of "not less than $10 billion." Id. ¶ 33. While not entirely clear, it appears that Gibbs alleges that the Secretary of the DOL owed a duty to protect Gibbs, and that permitting DOL employees to investigate whether he was improperly receiving FECA disability benefits while working, was a breach of that alleged "duty," causing him damages. What is clear, however, is that he seeks money damages from the federal government based on his claim of "negligence."

---

[12] The allegations of the Second Amended Complaint imply that Gibbs was once a practicing attorney, and a member of the Bar of South Carolina. See 2d Am. Complaint ¶¶ 27, 36.

It is well established that the United States is immune from suit unless it has consented to be sued, and its consent to be sued defines the terms and conditions upon which it may be sued. United States v. Mitchell, 445 U.S. 535, 538 (1980). The FTCA provides that the United States may be held liable for money damages for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment" in the same manner and to the same extent as a private person under like circumstances. 28 U.S.C. § 1346(b)(1); see also Turner ex rel. Turner v. United States, 514 F.3d 1194, 1203 (11th Cir. 2008). Thus, the "FTCA is a specific, congressional exception" to the United States' sovereign immunity. Suarez v. United States, 22 F.3d 1064, 1065 (11th Cir. 1994). As such, the waiver of sovereign immunity permitted under the FTCA "must be scrupulously observed, and not expanded, by the courts." Id.

The FTCA's waiver of sovereign immunity is a "limited waiver of the United States' sovereign immunity for tort claims" allowing "certain parties" to sue the government "under certain circumstances." Dalrymple v. United States, 460 F.3d 1318, 1324 (11th Cir. 2006) (internal quotations omitted). As such, before instituting an action under the FTCA, a claimant must first exhaust the required administrative remedies. McNeil v. United States, 508 U.S. 106, 107, 113 (1993); see also Turner, 514 F.3d at 1200. If a party files suit in a district court before filing an administrative claim and exhausting the statutory administrative remedies, the suit will be premature and the district court will lack subject matter jurisdiction over the action. See Turner, 514 F.3d at 1200 (quoting McNeil, 508 U.S. at 113 ("[t]he FTCA bars claimants from bringing suits in federal court until they have exhausted their

18

administrative remedies")).  Thus, before a federal court can exercise jurisdiction over an FTCA suit, the plaintiff must first file a timely administrative claim with the appropriate agency, and then allow that claim to be denied, or for six months to elapse. Suarez, 22 F.3d at 1065 (citing 28 U.S.C. § 2675(a)).   "[T]he failure to adequately allege exhaustion in the complaint is grounds for dismissal for lack of subject matter jurisdiction." Chapman v. U.S. Postal Serv., 442 F. App'x 480, 485 (11th Cir. 2011)(citing Dalrymple, 460 F.3d at 1324-26)), cert. denied, No. 11-7944, __ S.Ct. __, 2012 WL 538596 (U.S. Feb. 21, 2012).

Here, Gibbs has failed to allege that he filed a timely administrative claim.  Moreover, nothing in his Second Ammended Complaint can remotely be construed as suggesting that he has exhausted his administrative remedies.  As such, Count III of the Second Amended Complaint is due to be dismissed for lack of subject matter jurisdiction, for failure to exhaust the required administrative remedies.

### 4.   Count IV - Conspiracy

Gibbs's allegations, in Count IV, of a civil rights conspiracy pursuant to 42 U.S.C. § 1985, are incomprehensible.  He asserts that "[a]ll acts committed against Plaintiff . . . were designed to preserve the second class status of Black citizens, a class of which Plaintiff is an identifiable member," 2d Am. Complaint ¶ 35;[13] see also id. ¶ 38, and also that "[t]he Justice Department and/or F.B.I sought to protect high profile public Black figures who are 'controlled' F.B.I informants."   Id. ¶ 36.   In this regard, Gibbs makes fantastical and unsupported, extreme allegations regarding "Rep. John Lewis," "William 'Bill' Cosby," and "Julian Bond,"  alleging they are involved in the "art theft" of "William H. Johnson [sic]

---

[13]  Count IV contains two paragraphs numbered "35."  This citation is to the first  paragraph "35."

artwork," and other crimes. <u>Id.</u> ¶¶ 34, 36. Gibbs then references his FECA disability payments (over which, as set forth above, this Court does not have subject matter jurisdiction), alleging that "AUSA Corwin combined and conspired with Investigator Ryan and Ms. DeCarlo for the purpose of denying Plaintiff his disability benefits awarded by the Secretary." <u>Id.</u> ¶ 37. Gibbs then concludes his allegations with an unnecessary (and inappropriate) racial epithet as summing up the "essence of this conspiracy." <u>Id.</u> ¶ 38.a. This claim is patently frivolous. <u>See</u> <u>Tazoe v. Airbus S.A.S.</u>, 631 F.3d 1321, 1336 (11th Cir. 2011).

Upon review of the rather confusing allegations of the Second Amended Complaint, it appears that Gibbs is attempting to proceed under 42 U.S.C. § 1985(3), which provides a remedy for conspiracy to interfere with civil rights. 42 U.S.C. § 1985(3).[14] To state a claim under § 1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) resulting in an injury to person or property, or a deprivation of any right or privilege of a citizen of the United States." <u>Kivisto v. Miller, Canfield, Paddock & Stone, PLC</u>, 413 F. App'x 136, 140 (11th Cir. 2011)(citing <u>Childree v. UAP/GA AG CHEM, Inc.</u>, 92 F.3d 1140, 1146-47 (11th Cir. 1996)), <u>cert. denied</u>, 132 S.Ct. 577 (2011). The 11th Circuit Court of Appeals has noted that "conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint." <u>Kearson v. S. Bell Tel. & Tel. Co.</u>, 763 F.2d 405, 407 (11th Cir. 1985). Additionally, to satisfy the second element, the plaintiff must allege that the conspirators were

---

[14] "Section 1985 covers conspiracies to interfere with civil rights." <u>Kivisto v. Miller, Canfield, Paddock & Stone, PLC</u>, 413 F. App'x 136, 139 (11th Cir. 2011)(citing 42 U.S.C. § 1985), <u>cert. denied</u>, 132 S.Ct. 577 (2011).

motivated by "racial, or otherwise class-based, invidiously discriminatory intent." Almon v. Sandlin, 603 F.2d 503, 505 (5th Cir. 1979);[15] see also Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); Lucero v. Operation Rescue of Birmingham, 954 F.2d 624, 628 (11th Cir. 1992). Gibbs makes no factual allegations which would support an inference that Defendants conspired or agreed among themselves or with someone or failed to stop others from conspiring against him. See Mickens v. Tenth Judicial Circuit, 181 F. App'x 865, 876 (11th Cir. 2006)(because plaintiff failed to allege with specificity an agreement between defendants to deprive plaintiffs of their rights, § 1985(3) claim was due to be dismissed); Montford v. Moreno, No. 04-12909, 2005 WL 1369563, at * 7 (11th Cir. June 9, 2005)(complaint alleged only conclusory allegations of conspiracy and failed to allege any evidence that defendants reached an understanding to violate plaintiff's rights, warranting dismissal of § 1985(3) claim). Additionally, Gibbs does not allege any facts whatsoever suggesting that any conduct involving the William H. Johnson artwork, or events in Gibbs's life, including his FECA disability claim, disbarment, arrest and incarceration, were in anyway motivated by racial animus. As such, the allegations of Count IV of the Second Amended Complaint are insufficient to state a plausible claim for relief.[16]

---

[15] In Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[16] Gibbs also titles Count IV with a citation to 42 U.S.C. § 1986. The body of Count IV, however, makes no mention of the statute. "Section 1986 provides a cause of action against anyone who has 'knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses to do so.'" Park v. City of Atlanta, 120 F.3d 1157, 1159 (11th Cir. 1997)(quoting 42 U.S.C. § 1986). "Section 1986 claims are therefore derivative of § 1985 violations." Id. at 1159-60. Because Gibbs has not alleged sufficient facts to support an inference that a § 1985 violation occurred, his § 1986 claim, which is dependent on his § 1985 claim, is due to be dismissed.

**5. Count V: RICO**

In Count V of the Second Amended Complaint, Gibbs alleges that the "Defendants, combined and conspired to profit from the stolen Johnson artwork," and "[i]n taking steps in furtherance of said conspiracy, injured Plaintiff in his person and property, to wit: Plaintiff was prevented from litigating . . . , Plaintiff was disbarred . . . , Plaintiff was forced to close his law firm . . . , [and] Plaintiff's health was destroyed . . . ." 2d Am. Complaint ¶ 36.[17] Additionally, Gibbs alleges that "[t]he Smithsonian Institution knowingly violated the copyright as to the Johnson artwork," taking possession of the "stolen Black art" worth more than "$1.6 Billion." Id. ¶ 37. He refers again to "the wrongful conspiracy, racketeering, and other illegal acts caused by the Justice Department," and to "'[t]he year and a half torture of Plaintiff," an apparent reference to an earlier criminal conviction and imprisonment. Id. ¶ 41. See United States v. Gibbs, 185 F. App'x 258 (4th Cir. 2006), cert. denied, 549 U.S. 1117 (2007); Gibbs v. United States, Civil Action Nos. PJM-09-856, PJM-03-3550, Criminal Action No. PJM-03-400, 2009 WL 1097898 (D. Md. April 22, 2009).[18] Gibbs seeks an injunction "restraining the defendants from their illegal acts," an "order of mandamus" directing the United States and state attorneys general "to investigate the criminal acts of defendants", and damages caused

---

[17]   Gibbs's Second Amended Complaint repeats the use of paragraph numbers 36, 37, and 38 in paragraphs found in Counts IV and V of the Second Amended Complaint.  The respective paragraphs 36-38 referred to in this discussion of RICO are those found in Count V.

[18]   Gibbs also incorporates all of the remaining allegations of the Second Amended Complaint, including the preceding four claims, into Count V.  See 2d Am. Complaint ¶ 40.  Not only does this create an impermissible shotgun pleading, see Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295-96 (11th Cir. 2002), which the Court has previously advised is not permitted, (see Doc. 5; 02/07/11 Order), but also renders the allegations in Count V even more confusing.

by Defendants, which he contends total "not less than $100 Billion." 2d Am. Complaint ¶¶ 38, 39, 41, 42.

Gibbs paints his claim, which is brought pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), with a broad brush.[19]  Nevertheless, to state a RICO claim pursuant to 18 U.S.C. § 1964, Gibbs must allege three essential elements: (1) violation of § 1962; (2) injury to business or property; and (3) that the violation caused the injury. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991)(citing 18 U.S.C. § 1964(c)); see also Se. Laborers Health and Welfare Fund v. Bayer Corp., 444 F. App'x 401, 409 (11th Cir. 2011).  In order to adequately plead the first element, a violation of § 1962, a plaintiff must allege "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Kivisto, 413 F. App'x at 138 (quoting Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1282 (11th Cir. 2006)).  "In addition, plaintiffs in a civil RICO action must also satisfy the requirements of § 1964(c), which requires (1) a showing of an injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation."  Id. (quoting 18 U.S.C. § 1964(c)); see also Ironworkers Local Union 68 v. AstraZeneca Pharm., LP, 634 F.3d 1352, 1361 (11th Cir. 2011).  "Racketeering activity" is defined by § 1961 to include specified predicate acts. See 18 U.S.C. § 1961(1).  "In order to prove a pattern of racketeering activity in a civil or criminal RICO case, a Plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity."  Am.

---

[19]  He entitles it as one brought pursuant to "42 U.S.C. § 1964," an apparent reference to 18 U.S.C. § 1964, which he cites later.  See id. ¶ 41.a.  He also cites to 18 U.S.C. §§ 1961, and 1962, referring to "the wrongful conspiracy, racketeering, and other illegal acts caused by the Justice Department."  Id. ¶ 41.

Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290-91 (11th Cir. 2010). "'A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time.'" Id. (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 242 (1989).

"Section 1962(d) of the RICO statutes makes it illegal for anyone to conspire to violate one of the substantive provisions of RICO, including § 1962(c)." Am. Dental Ass'n, 605 F.3d at 1293 (citing 18 U.S.C. § 1962(d))(emphasis added). "'A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts.'" Id. (citations omitted). "A plaintiff need not offer direct evidence of a RICO agreement; the existence of a conspiracy 'may be inferred from the conduct of the participants.'" Id. (citation omitted). Additionally, "'[t]o be guilty of conspiracy, . . . parties must have agreed to commit an act that is itself illegal - parties cannot be found guilty of conspiring to commit an act that is not itself against the law.'" Kivisto, 413 F. App'x at 139 (quoting Jackson, 372 F.3d at 1269).

The Court construes the allegations of Count V of the Second Amended Complaint, as attempting to assert a RICO conspiracy claim. However, Count V does not plausibly, under Twombly, allege a pattern of racketeering activity arising out of the commission of two or more specified predicate acts. Indeed, Gibbs has failed to identify any § 1961 predicate acts that constitute "racketeering activity," much less a "pattern of racketeering activity.[20]

---

[20] "Racketeering activity" does include violations of 18 U.S.C. §§ 2314 and 2315 ("relating to interstate transportation of stolen property"), see 18 U.S.C. § 1961(1), but Gibbs does not make any allegation that the Defendants engaged in such conduct. And, even if Count V were based upon

(continued...)

Moreover, Gibbs has not "allege[d] facts that support each statutory element of a violation of one of the state or federal laws described in 18 U.S.C. § 1961(1)." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1087 (11th Cir. 2004).

Nor do the allegations in Count V (or the rest of the Second Amended Complaint) support an inference of an agreement by Defendants to an overall objective of a conspiracy, or an agreement to commit two predicate acts. See Am. Dental Ass'n, 605 F.3d at 1293.[21] Gibbs's conclusory allegations of "conspiracy", see 2d Am. Complaint ¶¶ 7, 36, 39, 41, are set aside, as instructed in Iqbal, as these allegations are no more than "'formulaic recitations' of a conspiracy claim that the Court in Twombly and Iqbal said were insufficient." Am. Dental Ass'n, 605 F.3d at 1294 (citing Twombly, 550 U.S. at 557; Iqbal, 129 S.C. at 1950-51)). All that remains are Gibbs's allegations that the Smithsonian Institute violated copyright laws, and that Gibbs suffered a series of damages from events in his life. At best, these allegations address so-called "parallel conduct." Gibbs makes no allegation, nor can one be inferred, that the Defendants, or any of the persons mentioned in Count V, agreed with each other to bring these events to pass, as opposed to having engaged in "'parallel conduct that could just as well be independent action.'" Am. Dental Ass'n, 605 F.3d at 1294 (quoting Twombly, 550 U.S. at 557).

---

[20](...continued)
predicate acts of mail or wire fraud, 18 U.S.C. §§ 1341, 1343, Count V would still be due to be dismissed, as it does not begin to allege with sufficient particularity any circumstances constituting fraud. See Am. Dental Ass'n, 605 F.3d at 1291-92.

[21] Because Count V fails to state a RICO conspiracy claim under Twombly and Iqbal's plausibility standard, it is unnecessary to the dismissal of Count V to determine whether Count V states a substantive RICO claim. See Am. Dental Ass'n, 605 F.3d at 1296 n.6.

"[A]llegations of parallel conduct, accompanied by nothing more than a bare assertion of conspiracy, do not plausibly suggest a conspiracy . . . ." <u>Am. Dental Ass'n</u>, 605 F.3d at 1294. This conclusion is especially true where, as here, there is an "'obvious alternative explanation' for each of the collective actions alleged that suggest lawful, independent conduct." <u>Id.</u> at 1295 (citing <u>Twombly</u>, 550 U.S. at 568). Gibbs's unsuccessful art litigation, disbarment, and criminal conviction more conceivably all arose from separate, lawful and independent circumstances, and absent specific allegations, it is not plausible from Gibbs's allegations that these events were the product of a pattern of unlawful racketeering activity or a preceding agreement among Defendants. Thus, Gibbs has not alleged sufficient facts to establish the plausibility of an agreement among Defendants or other persons or entities to engage in any ongoing criminal conduct or enterprise. "Plaintiffs' allegations of Defendants' parallel conduct, absent a plausibly-alleged 'meeting of the minds,' fail to 'nudge[ ] [his] claims across the line from conceivable to plausible.'" <u>Am. Dental Ass'n</u>, 605 F.3d at 1296 (quoting <u>Twombly</u>, 550 U.S. at 557, 570). Accordingly, Count V alleging RICO conspiracy, is due to be dismissed.

**B.    Plaintiff's Motions to Amend Second Amended Complaint**

Gibbs filed his initial Complaint on January 25, 2011. The Court struck the Complaint <u>sua sponte</u> for being an impermissible shotgun pleading. (Doc. 5; 02/07/11 Order). In that Order, the Court provided Gibbs with citation to Rules 8 and 10, Federal Rules of Civil Procedure, and set forth some very basic pleading requirements. <u>Id.</u> Gibbs subsequently filed an Amended Complaint (Doc. 6), and the Second Amended Complaint. Currently pending are Gibbs's two motions for leave to amend the Second Amended Complaint, both

of which were filed subsequent to Defendants' Motion to Dismiss. (See Docs. 65, 81; Motions to Amend). Gibbs has submitted two proposed complaints with his motions. (See Docs. 65-1, 81-1; Proposed Amended Complaints).

The Court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile. Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1263 (11th Cir. 2004). "'A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.'" Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 777 n.10 (11th Cir. 2000)(citation omitted); see also Hall, 367 F.3d at 1263 (denying motion for leave to amend to file a second amended complaint).

The Court has previously provided Gibbs with the opportunity to amend his Complaint in order that he may present his claims in accordance with the pleading requirements of the law and his substantive claims. 02/07/11 Order. Gibbs's Second Amended Complaint is due to be dismissed, for the reasons set forth above. The Court has had the opportunity to review Gibbs's Proposed Amended Complaints, and makes the determination that they too would be subject to dismissal. The Court specifically adopts the analysis and recommendation of the Magistrate Judge with respect to any further amendment, Report at 20-23, with the exception of the finding that the Rooker-Feldman Doctrine applies.[22] Report at 22. Accordingly, Gibbs's pending Motions to Amend are due to be denied.

---

[22] "Under the Rooker-Feldman abstention doctrine, '[i]t is well-settled that a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision.'" Velardo v. Fremont Inv. & Loan, 298 F. App'x 890, 892 (11th Cir. 2008)(quoting Dale v. Moore, 121 F.3d 624, 626 (11th Cir. 1997)); see generally Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

The Court makes no determination on this record, one way or the other, whether the Rooker-Feldman doctrine applies.

It is hereby

**ORDERED**:

1.      The objections set forth in Plaintiff's Reply to Report and Recommendation (Doc. 92) are **OVERRULED**.

2.      The Magistrate Judge's Report and Recommendation (Doc. 89) is **ADOPTED IN PART**, only to the extent specifically set forth in this Order.

3.      Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 27) is **GRANTED**.

4.      Plaintiff's Second Amended Complaint (Doc. 11) is **DISMISSED**, as follows:

        A.      Counts I, II, and III are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

        B.      Counts IV and V are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

4.      Plaintiff's Motion for Leave to Amend the Complaint (Doc. 65) is **DENIED**.

5.      Plaintiff's Amended Motion for Leave to Amend the Complaint (Doc. 81) is **DENIED**.

6.     The Clerk is directed to terminate all remaining pending motions, and to close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 31st day of March, 2012.

MARCIA MORALES HOWARD
United States District Judge

lc12
Copies to:

The Honorable Thomas E. Morris,
   United States Magistrate Judge

Counsel of Record
Unrepresented Party